UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

BALINDER SINGH,

  Petitioner,

  v.

TIMOTHY S. ROBBINS, et al.,

  Respondents.

No.  1:26-cv-00480-DC-SCR

FINDINGS & RECOMMENDATIONS

Petitioner is a federal immigration detainee proceeding through counsel in this habeas corpus action filed pursuant to 28 U.S.C. § 2241.  This action was referred to the undersigned by operation of Local Rule 302 and 28 U.S.C. § 636(b)(1).

**I.      Factual and Procedural History**

In light of the overwhelming number of immigration habeas petitions pending in this district and based on the uncontested facts presented in the § 2241 application, the undersigned reproduces the relevant portions of the habeas petition herein.

> Petitioner is a 33-year-old native and citizen of India.  On or about March 8, 2023, Petitioner entered the US, and he was encountered by United States Border Patrol.  On March 9, 2023, the Department of Homeland Security ("DHS") issued a Notice to Appear ("NTA") under section 212(a)(6)(A)(i) charging him as 'a[] [noncitizen] present in the United States without being admitted or paroled.'  He was ordered released on recognizance.  After he was released, [he] timely filed an I-589, Application for Asylum with US Citizenship & Immigration Services ("USCIS").  His asylum case was pending before the Concord Immigration Court.  After his arrival in the United States, Petitioner was subject [] [to] ICE check ins all of

1

>which he attended without any failure.  He strictly complied with ICE requirements and never violated any conditions imposed on him.  On or around December 11, 2025, [] ICE re-detained Petitioner after he attended his ICE check in appointment at the [] Fresno ICE/ERO Center….   [P]etitioner has been detained by Immigration and Customs Enforcement ("ICE"), with no end to petitioner's detention in the reasonably foreseeable future.

ECF No. 1 at 2-3.  He is presently detained at the Golden State Annex in McFarland, California.  ECF No. 1 at 5.

In claim one of his § 2241 application, petitioner raises a Fifth Amendment Due Process challenge to his ongoing and "prolonged detention under § 1225(b) without any individualized assessment of the need for detention…."  ECF No. 1 at 10.  In claims two and three, petitioner contends that, as a matter of statutory interpretation, his detention falls under the discretionary detention statute codified at 8 U.S.C. § 1226(a) and not § 1225(b).  ECF No. 1 at 14-23.  By way of relief, petitioner seeks immediate release, or, in the alternative, a bond hearing before an immigration judge where the government bears the burden of proving flight risk or dangerousness by clear and convincing evidence.  Id. at 24.

Respondents submitted a three page answer to the § 2241 petition asserting that petitioner is subject to mandatory detention pursuant to 8 U.S.C. § 1225(b)(2).  ECF No. 8.  Moreover, respondents do not challenge the authenticity of the immigration records attached to petitioner's § 2241 application; nor do they submit any additional documents relevant to the pending issues.  See ECF No. 3 at 2 (screening order).

**II.    Legal Standards**

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States."  Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2).  "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and ... the traditional function of the writ is to secure release from illegal custody."  Preiser v. Rodriguez, 411 U.S. 475, 484 (1973).  The federal habeas statute confers subject matter jurisdiction over challenges to any individual's confinement "in violation of the Constitution or laws or treaties of the United States[.]"  28 U.S.C. § 2241(c)(3).

2

**A.    Constitutional Framework**

The Due Process Clause protects persons in the United States from being deprived of life, liberty, or property without due process of law.  U.S. Const. amend. V.  The Supreme Court has concluded that "the Due Process Clause applies to all 'persons' within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent."  Zadvydas v. Davis, 533 U.S. 678, 693 (2001).  This provision "protects individuals against two types of government action:  violations of substantive due process and procedural due process."  United States v. Quintero, 995 F.3d 1044, 1051 (9th Cir. 2021) (internal quotation omitted).  Freedom from imprisonment or physical restraint is a "fundamental" right at the "core of the liberty protected by the Due Process Clause."  Hernandez v. Sessions, 872 F.3d 976, 993 (9th Cir. 2017) (quoting Foucha v. Louisiana, 504 U.S. 71, 80 (1992)).  As a matter of substantive due process, governmental action may only infringe a fundamental right if "the infringement is narrowly tailored to serve a compelling state interest."  Reno v. Flores, 507 U.S. 292, 302 (1993).

Courts examine procedural due process claims in two steps: the first step is determining whether there exists a protected liberty interest under the Due Process Clause.  The second step examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution.  See Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 460 (1989); Morrissey v. Brewer, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due.").  In deciding what process is due to immigration detainees, the Ninth Circuit has assumed, without deciding, that the three-part test articulated in Mathews v. Eldridge, 424 U.S. 319 (1976), applies.  See Rodriguez Diaz, 53 F.4th at 1206-07.  Under Mathews, the court considers three factors: (1) the private interest affected; (2) the risk of an erroneous deprivation of that interest; and (3) the government's interest involved including any fiscal or administrative burden that additional procedures would include.  Mathews, 424 U.S. at 335.

**B.    Statutory Framework**

The statutory and regulatory framework governing immigration detention is complex. "Where a [noncitizen] falls within this statutory scheme can affect whether his detention is

3

mandatory or discretionary, as well as the kind of review process available to him if he wishes to contest the necessity of his detention." Prieto-Romero v. Clark, 534 F.3d 1053, 1057 (9th Cir. 2008). Petitioner asserts that he is subject to the discretionary provisions of 8 U.S.C. § 1226(a) while respondents rely upon 8 U.S.C. § 1225(b)(2) to assert that he is subject to mandatory detention. The difference between these two statutes is described in Labrador-Prado v. Noem, No. 1:25-cv-1598 DC SCR (HC), 2025 WL 3458802 at *3 (E.D. Cal. Dec. 2, 2025):

> Section 1226 provides a discretionary detention scheme while removal proceedings are pending. 8 U.S.C. § 1226. Specifically, during the pendency of removal proceedings, the government may continue to detain the individual or may release him on bond or conditional parole. 8 U.S.C. § 1226(a)(2)(A)-(B). When a person is apprehended under section 1226, an ICE officer makes an initial custody determination, and the noncitizen will be released upon a showing "to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the [noncitizen] is likely to appear for any future proceeding." Diaz v. Garland, 53 F.4th 1189, 1196 (9th Cir. 2022) (citing 8 C.F.R. § 236.1(c)(8)). If the noncitizen is detained under section 1226(a), she [or he] is entitled to a bond hearing. Jennings v. Rodriguez, 583 U.S. 281, 306 (2018).
>
> As to noncitizens seeking admission into the United States, section 1225 provides for mandatory detention of certain individuals and, in some cases, expedited removal. 8 U.S.C. § 1225; see also Ortiz Donis, 2025 WL 2879514, at *4 ("While '§ 1226 applies to aliens already present in the United States,' U.S. immigration law also 'authorizes the Government to detain certain aliens seeking admission into the country under §§ 1225(b)(1) and (b)(2),' a process that provides for expedited removal.") (citing Jennings, 583 U.S. at 303.)
>
> [….]
>
> Until this year, the United States Department of Homeland Security ("DHS") has "applied [section] 1226(a) and its discretionary release and review of detention to the vast majority of noncitizens allegedly in this country without valid documentation." Salcedo Aceros v. Kaiser, No. 25-cv-06924-EMC, 2025 WL 2637503, at *3 (N.D. Cal. Sep. 12, 2025). According to Petitioner, on July 8, 2025, DHS issued a memo to all employees of ICE stating that it had revisited its legal position on detention and release authorities and that section 1225 "is the applicable immigration detention authority for all applicants for admission." (Doc. No. 1 at ¶ 37.) Following this development, DHS began directing federal immigration officials to seek expedited removal of noncitizens pursuant to section 1225(b)(2). Garcia v. Noem, No. 25-cv-02180-DMS-MMP, 2025 WL 2549431, at *5 (S.D. Cal. Sept. 3, 2025); Salcedo Aceros, 2025 WL 2637503, at *4.

While it is not perfectly clear under what authority petitioner was initially detained, it appears that he was released under 8 U.S.C. § 1226(a).  Instead of subjecting petitioner to expedited removal under 8 U.S.C. § 1225(b)(1)—which would not allow for referral to an immigration judge ("IJ") or release from custody until *after* a positive credible fear determination, 8 U.S.C. § 1225(b)(1)(B)(IV)—one day after petitioner's arrest, DHS issued him a notice to appear for generic removal proceedings before an IJ and released him.  ECF No. 1-1 (Exh. A, Notice to Appear).  The release documents are not in the record.  But absent conflicting information in the record, the undersigned assumes that petitioner was released under 8 U.S.C. § 1226(a) because DHS did not subject him to expedited removal proceedings.[1]

**I.        Analysis**

The undersigned agrees with other district courts in this circuit that have found that a noncitizen like petitioner, who was released into the United States, has a liberty interest in his continued release and is entitled to certain due process protections.  See, e.g. R.A.N.O v. Wofford, No. 1:25-cv-01535-KES-EPG (HC), 2026 WL 40507 (E.D. Cal. Jan. 6, 2026); Ramirez Tesara v. Wamsley, No. 2:25-CV-01723-MJP-TLF, 2025 WL 2637663 (W.D. Wash. Sept. 12, 2025); Francois v. Wamsely, No. 2:25-CV-2122-RSM-GJL, 2025 WL 3063251 (W.D. Wash. Nov. 3, 2025); Castillo v. Wofford, No. 1:25-CV-01586-JLT-HBK, 2025 WL 3466064, at *8 (E.D. Cal. Dec. 2, 2025) (finding past precedent concerning release of individuals detained as arriving noncitizens inapposite to a noncitizen who had been detained at the border and paroled pending removal proceedings); see also Rodriguez v. Marin, 909 F.3d 252, 256 (9th Cir. 2018) (noting in case involving § 1225(b) and related statutes that "[a]rbitrary civil detention is not a feature of our American government," and expressing "grave doubts that any statute that allows

---

[1] Even if petitioner's initial detention had been governed by 8 U.S.C. § 1225(b)(1) and release had been governed by 8 U.S.C. § 1182(d)(5), the procedural due process analysis below would not be substantially different.  Moreover, respondents' assertion that petitioner is subject to detention under 8 U.S.C. § 1225(b)(2) cannot be sustained.  Another court vacated the policy underlying that assertion.  See Maldonado Bautista v. Santacruz, No. 5:25-cv-1873 SSS BFM, 2025 WL 3713982, at *4 (C.D. Cal. Dec. 18, 2025), judgment entered sub nom. Maldonado Bautista v. Noem, No. 5:25-cv-01873-SSS-BFM, 2025 WL 3678485 (C.D. Cal. Dec. 18, 2025).  Yet another court ordered the policy underlying that assertion stayed, in an order that applies to the ICE Field Office overseeing petitioner's detention.  See Garro Pinchi v. Noem, No. 25-cv-05632 PCP, 2025 WL 3691938 (N.D. Cal. Dec. 19, 2025).  As far as the Court knows, that judgment in Maldonado Bautista and order in Garro Pinchi remain binding on respondents.

5

for arbitrary prolonged detention without any process is constitutional"). "[T]he government's decision to release an individual from custody creates 'an implicit promise,' upon which that individual may rely, that their liberty 'will be revoked only if [they] fail[ ] to live up to the . . . conditions [of release].'" Pinchi v. Noem, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. July 24, 2025) (quoting Morrissey v. Brewer, 408 U.S. 471, 482 (1972)) (modifications in original). "Accordingly, a noncitizen released from custody pending removal proceedings has a protected liberty interest in remaining out of custody." Salcedo Aceros v. Kaiser, No. 25-CV-06924-EMC, 2025 WL 2637503, at *6 (N.D. Cal. Sept. 12, 2025). Under Morrissey, 408 U.S. 471, 481 (1972), petitioner's release implied a promise that he would not be re-detained if he abided by the terms of his parole. There is no evidence in the record that petitioner violated any condition of his release or has any criminal record.

Having found that petitioner has a protected liberty interest, the only question remaining is what procedures are necessary to protect that liberty interest. Under the procedural due process test announced in Mathews v. Eldridge, 424 U.S. 319 (1976), this court considers three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Mathews v. Eldridge, 424 U.S. 319, 335 (1976).

The first factor unquestionably tilts in petitioner's favor. An individual's private interest in "freedom from prolonged detention" is "unquestionably substantial." Singh v. Holder, 638 F.3d 1196, 1208 (9th Cir. 2011). Petitioner was at liberty for over 2 years before being re-detained in this case. During that time period, he obtained permission to lawfully work, maintained steady employment including earning "bonuses based on his reliability and hard work." ECF No. 1 at 8. He is the sole provider for his wife and ten year old son. ECF No. 1 at 9. He was also a member of the Bholay Baba Temple in Fresno. ECF No. 1 at 8. Therefore, this factor favors a finding that petitioner's private interest has been affected by his detention.

Second, the risk of erroneous deprivation also weights in petitioner's favor. Without any

6

procedural safeguards to determine whether his detention was justifiable, the probative value of additional procedural safeguards is high.  R.D.T.M. v. Wofford, No. 1:25-cv-01141-KES-SKO (HC); 2025 WL 2617255, at *4 (E.D. Cal. Sept. 9, 2025); A.E. v. Andrews, No. 1:25-CV-00107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025) (stating that "[t]he risk of an erroneous deprivation [of liberty] is high" when "[the petitioner] has not received any bond or custody redetermination hearing.").  Petitioner has been detained without being provided a bond hearing to evaluate his dangerousness and/or flight risk.  Neither party alleges that he violated any term of his parole or that he has any criminal record.  Under these circumstances, a pre-deprivation hearing before a neutral decisionmaker would have significant value in determining whether petitioner's detention is necessary.  Thus, the second Mathews factor favors petitioner.

Finally, the government's interest is low, and the effort and cost required to provide petitioner with procedural safeguards are minimal.  See Garcia v. Andrews, No. 2:25-CV-01884-TLN-SCR, 2025 WL 1927596, at *5 (E.D. Cal. July 14, 2025).  Where removal is not imminent under a final order of removal, as in this case, "[t]he government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by [ ] bond or alternative conditions."  Hernandez, 872 F.3d at 994; see also R.D.T.M., 2025 WL 2617255, at *4 ("Civil immigration detention, which is nonpunitive in purpose and effect is justified when a noncitizen presents a risk of flight or danger to the community.") (cleaned up).  For all these reasons, the undersigned finds that  petitioner is entitled to relief under the Mathews factors.

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Petitioner's application for a writ of habeas corpus (ECF No. 1) be granted.

2. Petitioner be ordered to be released immediately from the respondents' custody with the same conditions that he was subject to prior to his redetention on December 11, 2025.

3. At the time of release, respondents be required to return all of petitioner's documents and possessions.

4. If the government seeks to re-detain petitioner, it must provide no less than seven (7) days' notice to petitioner and must hold a pre-deprivation bond hearing before a neutral arbiter

7

pursuant to section 1226(a) and its implementing regulations, at which petitioner's eligibility for bond must be considered.

5. Respondents be further directed to file a notice certifying compliance with the above provisions within three days from the date of any adoption of these Findings and Recommendations by the District Judge assigned to this matter.

6. The Clerk of Court be directed to enter judgment in favor of petitioner and to close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within **seven days** after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  The undersigned finds that a shortened objection period is warranted in this case given the nature of the relief at issue as well as the fact that the parties have had sufficient time to submit all of their arguments in written briefs.  See United States v. Barney, 568 F.2d 134, 136 (9th Cir. 1978) (per curiam) (stating that 28 U.S.C. § 636(b)(1) sets the maximum objection period and not the minimum); see also Local Rule 304(b).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: February 3, 2026

SEAN C. RIORDAN
UNITED STATES MAGISTRATE JUDGE